UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| NORTHUP PROPERTIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 07-30-ART |
| | ) | |
| v. | ) | |
| | ) | |
| CHESAPEAKE APPALACHIA, L.L.C., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |
| | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on the parties' cross-motions for summary judgment [R. 15 and 17].  At a hearing held on February 20, 2008, the parties agreed this case was appropriate for summary judgment and that there was no dispute as to the facts.  Thus, it is appropriate for the Court to decide this matter on the parties' cross-motions for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (recognizing that the trial judge shall grant summary judgment if there is no genuine issue as to any material fact).

Accordingly, this Court hereby **GRANTS** summary judgment in favor of Defendant, Chesapeake Appalachia, L.L.C., for the reasons that follow as well as those provided at the February 20, 2008, hearing.

## FACTUAL BACKGROUND

The Plaintiff, Northup Properties, Inc. (hereinafter "Northup"), and the Defendant, Chesapeake Appalachia, L.L.C. (hereinafter "Chesapeake"), are the successors in interest, as the lessor and lessee respectively, to an October 1, 1968, Oil and Gas Lease (hereinafter "the Lease") covering  approximately four thousand four hundred (4,400) acres in Lawrence County,

Kentucky. [R. 13] (hereinafter *"Stipulations"*), at ¶¶ 1 and 2.  (The Plaintiff and its predecessors in interest are hereinafter collectively referred to as "Northup," and the Defendant and its predecessors in interest are hereinafter collectively referred to as "Chesapeake.")  The Lease contains an habendum clause which provides that:

> It is agreed that this lease shall remain in force for the term of ten (10) years from this date and as long thereafter as the said land is operated by the Lessee in the search for or production of oil or gas, with an extended term by payment of rentals as hereinafter set forth.

*Stipulations*, Exhibit 1 at p. 5.

Three wells were drilled upon the leased premises during the initial ten-year term.  *Id.* at ¶ 3.  There was no production from two of the wells, and those wells were plugged.  *Id.*  The third well drilled during this term is capable of production.  *Id.* at ¶ 3(a)(iii).  Chesapeake, however, has never extracted gas or oil from this well, and thus, Northup has never received royalties.  *Id.* at ¶ 3(b).

Chesapeake has paid delay rental payments in the amount of $1.00 per acre per year since the inception of the Lease.  *Id.* at ¶ 4.  (At oral argument, the parties agreed that the total payments in delay rentals were approximately $164,430.00.)  Northup has continued to accept the delay rental payments without objection to Chesapeake's decision not to market the gas from the existing well, and Northup has never made a demand to Chesapeake to develop the Lease further and/or extract any oil or gas.  *Id.*

On December 13, 2006, Northup sent Chesapeake a letter stating that the Lease had expired by its own terms and requested a release to remove any cloud upon the title.  *Stipulations*, Exhibit 13.  Chesapeake, however, denied that the Lease had expired and refused to

provide the requested release.  This action ensued.

Northup filed suit in Lawrence County, Kentucky, Circuit Court seeking a declaration of the parties' rights in the Lease.  Chesapeake removed the matter to this Court.  [R. 1].  The parties stipulated to all relevant facts, as set forth above, and agreed to proceed by way of submitting cross-motions for summary judgment.

## DISCUSSION

The primary issue in this case is whether under Kentucky law Northup had to provide notice to Chesapeake and a demand to produce before cancelling the Lease agreement.  A lessee must comply with Kentucky's notice requirement unless the lease is cancelled in one of three ways:  (1) termination by its own terms; (2) forfeiture; or (3) abandonment.  *Hiroc Programs, Inc. v. Robertson*, 40 S.W.3d  373, 377 (Ky. Ct. App. 2000).  None of these occurred here.

A.      Cancellation of the Lease

1.      Expiration by terms

Northup primarily argues the Lease expired by its own terms at the end of the initial ten-year period.  The Lease, however, did not expire by its own terms, but explicitly provided that the term may be extended by the payment of delay rentals.  *See Frear v. P.T.A. Indus.*, 103 S.W.3d 99, 107 (Ky. 2003) (holding that in the absence of ambiguity, Kentucky construes written instruments strictly and "an otherwise unambiguous contract does not become ambiguous when a party asserts – especially post hoc, and after detrimental reliance by another party – that the terms of the agreement fail to state what it intended").

a.      Plain language of Lease

The Lease at issue in this case contains multiple, express provisions providing for its

extension beyond the first ten years by the payment of delay rentals, demonstrating that it was

negotiated and intentionally provided for by the parties.  Moreover, no provision of the Lease

provides the lessor the right to terminate without notice.

      Specifically, the Lease provides:

> It is agreed that this lease shall remain in force for the term of **ten
> (10) years** from this date **and** as long thereafter as the said land is
> operated by the Lessee in the **search for** or production of oil or gas,
> **with an extended term by payment of rentals as hereinafter set
> forth.**

*Stipulations*, Exhibit 1 at p. 5 (emphasis added).  Thus, the term is not limited to ten years.  The

parties specifically contemplated that the Lease would extend beyond the ten-year period when

they included the delay-rental provision.

      In addition, under the terms of the Lease, Chesapeake had the option not to market the

gas, but instead to pay delay rentals (as was done in this case).  The Lease provides at page 6 that

"[i]n the event that Lessee does not market the gas from said premises, Lessee is to pay delay

rental [payments] until such time as gas is marketed."  *Id.* at p. 6.  And, at page 7, it states that

"[i]t is agreed that said Lessee may drill or not drill on said lands as it may elect, and the

consideration and rentals paid and to be paid constitute adequate compensation for such

privilege."  *Id.* at p. 7.  Thus, not only are delay rental payments specifically called for in the

Lease, the Lease expressly identifies that the "privilege" to drill or not drill belongs to

Chesapeake and that Northup's receipt of the delay rentals "constitutes adequate compensation

for such privilege."

      Additionally, the parties agreed in the paragraph preceding those set forth above that:

> Lessee shall pay the Lessor a rental at the rate of $1.00 per acre per

> annum payable quarterly in advance beginning three months from
> the date hereof, ***in lieu of development of the entire leased***
> ***acreage***; provided, however, that each gas well drilled by Lessee
> on any portion of said land, ***whether the same be productive or***
> ***non-productive***, shall liquidate and abate said delay rental with
> reference to 250 acres of the lease premises.

*Stipulations*, Exhibit 1 at p. 7 (emphasis added).  Thus, the parties contemplated a factual

scenario consistent with the background in this case.  If the lessee undertakes the "search for" gas

within the primary term of the contract, which Chesapeake did, and if the search was not

successful or if the lessee chooses not to market the gas, the lessee could retain the right to future

development or to future marketing - at its option - by the payment of the delay rentals to the

lessee.  In this situation, the delay rentals act as the consideration in lieu of the royalties the lessor

would receive if the gas were marketed.

     As further evidence of the parties' contemplation that there may be non-producing wells

and that the lessee could, at its option, continue to lease the property by payment of delay rentals,

the Lease provides Chesapeake with the right to surrender any portion of the leasehold estate by

the non-payment of the delay rentals:

> [U]pon the payment of One Dollar, at any time, by said Lessee to
> the Lessor the Lessee may, surrender and abandon this lease in
> whole after which surrender all payments of rentals herein
> provided for shall cease; or, Lessee may surrender less than the
> whole property leased, by surrendering parts thereof in blocks of
> not less than Two Hundred Fifty (250) acres . . ., the same may be
> surrendered, after which partial surrender the rentals herein
> provided to be paid shall cease and determine as to the acreage so
> surrendered.

*Stipulations,* Exhibit 1 at pp. 10-11.

     In conclusion, the Lease provides that it can be extended where, as here, the lessee

conducted operations to search for gas within the primary ten-year period, but no gas was marketed, and then the lessee continued to pay the delay rentals.

        b.    <u>Course of conduct</u>

Even if the Court found that an ambiguity existed in the contract, the parties' course of conduct demonstrates that the Lease has been extended and did not expire by its own terms. When an ambiguity exists in a contract, "the court will gather, if possible, the intention of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties, and the conditions under which the contract was written." *Frear*, 103 S.W.3d at 106. "It is an accepted rule of law that where there is any ambiguity in the contract with respect to the provisions relating to royalty payments, the conduct of the parties over the years is entitled to great weight." *Lafitte Co. v. United Fuel Gas Co.*, 177 F. Supp. 52, 59 (E.D. Ky. 1959) (applying Kentucky law).

The *Lafitte* court further noted:

> Practical construction by uniform and unquestioned acts from the outset, especially when continued for a long period of time, is entitled to great, if not controlling, weight, for it shows how the parties who made the contract understood it. If they do not know what they meant, who can know? Such a construction is presumed to be right, because it was made by the parties themselves when under the influence of conflicting interests. This is true whether the construction is by contemporaries or their successors.

*Id.* at 60.

In this case, the parties have nearly a 40-year course of dealing. Chesapeake has paid, and Northup has accepted, delay rentals well beyond the time Northup claims that the Lease expired by its own terms. Further, the Lease was transferred by the Northup heirs to Plaintiff Northup

*after* the purported termination of the Lease.  Northup did nothing but continue to accept

payments.  In that regard, Northup's own conduct indicates that it believed the Lease did not

expire by its own terms.  *See Denniston v. Kenova Oil Co.*, 220 S.W. 1078, 1080 (Ky. 1920)

("Where the rent has been paid and accepted unconditionally by the lessor, this satisfies the

demand of the contract up to that date, and the lessee has the right to assume that the lessor was

satisfied to receive the rentals in lieu of the development of the land.").

    2.    <u>Forfeiture</u>

In Kentucky, a lessee may lose its interest in a lease by forfeiture, which is the breach of

an express or implied covenant or obligation of the lease.[1]  *Hiroc*, 40 S.W.3d at 377.  In order to

cancel a lease in this manner, however, notice and demand to develop the lease must occur first.

*Id.*  Over the parties' nearly 40-year course of dealing, Northup has never given any such notice

or demand to Chesapeake.  Northup argues that the Lease is forfeited because notice and demand

are only necessary during the initial term of the Lease.  The Court has found no authority to

support such a conclusion and, to the contrary, finds that Kentucky forfeiture law supports the

opposite conclusion.  *Sapp v. Massey*, 358 S.W.2d 490, 492-93 (Ky. 1962) (recognizing that it is

well-settled law in Kentucky that a lessor must make definite and unequivocal demand of the

lessee to develop the property within a reasonable time; such action is a condition precedent to a

---

[1]  Northup has not raised the issue of whether Chesapeake breached an implied covenant
to develop.  Therefore, the Court makes no findings or determinations as to whether the implied
covenant to develop has been negated by the express terms of the Lease, which Kentucky has
recognized is permissible under basic contract principles.  *See Oliver v. Louisville Gas & Elec.
Co.*, 732 S.W.2d 509, 511 (Ky. Ct. App. 1987) (holding that "[w]hile it is true that under some
circumstances there exists an implied covenant in oil and gas leases that a reasonable attempt
will be made to explore and develop the resources, there is no room for an implied covenant
where the lease agreement itself makes the matter discretionary with the lessee").

forfeiture suit); *accord Leeper v. Lemon G. Neely Co.*, 293 F. 967, 970-71 (6th Cir. 1923); *Mid-South Oil Co. v. Jaynes*, 271 S.W. 553, 554 (Ky. 1925); *Satterfield v. Galloway*, 234 S.W. 448, 449 (Ky. 1921); *L.E. Cooke Corp. v. Hayes*, 549 S.W.2d 837, 838-39 (Ky. Ct. App. 1977). Northup has provided no authority to the contrary. Thus, the Court finds that the Lease has not been forfeited as Northup has made no demand for development.

       3.     <u>Abandonment</u>

A claim of abandonment requires a showing of "intentional and actual relinquishment of the leased premises." *Hiroc*, 40 S.W.3d at 377; *see also Fuqua v. Chester Oil Co.,* 246 S.W.2d 1007, 1008 (Ky. 1952). The *Hiroc* court explained,

> If [the lessee] has abandoned [the lease], he knows that fact and is entitled to no notice, while if lessee is only remiss or dilatory in the manner in which he is developing or operating the property, he is entitled to notice that he must improve his operations, and should he fail to heed the notice, suit will be brought to cancel the lease.

*Hiroc*, 40 S.W.2d at 378. "[M]ere lapse of time and nonuse are not, alone, enough to constitute abandonment of oil and gas leasehold interests." *Pro Gas, Inc. v. Har-Ken Oil Co.*, 883 S.W.2d 485, 488 (Ky. 1994). In this case, Chesapeake has not relinquished the Lease. Rather, Chesapeake's commencement of the search for gas within the initial ten-year period, the continued payment of the delay rentals, and the parties' course of dealing over the past 40 years clearly demonstrates Chesapeake's obvious intention to keep the Lease.

    B.    <u>Lack of mutuality</u>

Northup also argues that the Lease is void for lack of mutuality of obligation, contending that while Chesapeake can continue to pay delay rentals, Northup has no rights under the Lease. This argument fails. Although there is a general rule against allowing only one side to terminate

a lease, a Kentucky case on point provides, "where consideration is good and sufficient (and one dollar per acre per year is) then rights relative to termination may be expressly contracted by either party without bringing such instrument under the unilateral rule." *L.E. Cooke Corp.*, 549 S.W.2d at 838.  In *L.E. Cooke Corp.*, the oil and gas lease was for one year and thereafter until notice was given by lessee of its intent to cancel.  *Id.* at 838-39.  The lessee could renew the lease annually at a rate of one dollar per acre per year, and lessors argued that a lease that is terminable at the will of the lessee is also terminable at the will of the lessor.  *Id.* at 838.  The court disagreed and stated that in the absence of a contractual duty to commence development, "there is no obligation on the part of the lessee to commence the actual operations unless and until lessors have given sufficient notice demanding the same within a reasonable time thereafter, and, in addition thereto, the lessee fails to comply therewith, the lessor[s] shall then have the right to seek an end to the contract." *Id.* at 839.  Thus, lessors had a remedy if they were so disposed to avail themselves of it by giving sufficient notice to the lessee and demanding production within a reasonable time.  *Id.*

        Kentucky law is well settled in allowing a lessor to cancel an oil and gas lease upon providing sufficient notice to the lessee that if the property is not developed within a reasonable time, cancellation will occur.  As early as 1925, Kentucky recognized the proper notice and demand requirements,

> The lessor may at any time previous to the last moment in which
> the rentals may be paid give to the lessee notice that he will not
> again accept the rentals for the extension of the lease for another
> period, and will refuse such rentals and demand development of
> the leased premises according to the terms of the lease, and if, after
> such notice, such development is unreasonably delayed, the lessor
> may have a cancellation of the lease contract, even though the
> lessee has offered or tendered the rental before the due date, which
> rental was refused by the lessor.

*Mid-South Oil Co.*, 271 S.W. at 554-55.

In *Mid-South Oil Co.*, the lessee had paid regular delay rentals that were accepted by the lessor. *Id.* at 554. The lessor then wrote a letter demanding "immediate" production, and the lessee responded with a request to wait and begin production in the spring. *Id.* The court concluded that the notice was insufficient, a reasonable time had not elapsed, and the lessor was not entitled to cancellation of the lease. *Id.* at 555. Instead, the lessor had to make the demand on the lessee to develop within a reasonable time, which is determined on a case-by-case basis. *Id.* The court also noted that in cases where the lessee is holding the land "purely for speculative purposes," the time-frame for development after notice is shorter. *Id.* at 554.

Similarly, in *Sapp*, 358 S.W.2d at 492-93, the court held,

> It is well settled law of this jurisdiction that where the right to have a lease forfeited for breach of the implied covenant to develop the property diligently and prudently is asserted, the lessor must have put the lessee in default by making definite and unequivocal demand of him that he do so within a reasonable time, or by giving that character of notice that compliance with the implied covenant is required. This is a condition precedent to the maintenance of a suit to forfeit, and the burden is upon the lessor to prove it.

In *Sapp*, the court concluded that lessors' mere complaint to lessees that further wells had not been drilled did not amount to sufficient notice or demand to develop the property, and thus, the lessees' rights to the lease had not been forfeited for lack of reasonable development. *Id.* at 493.

Finally, in analyzing a lessor's claim of forfeiture for non-development, the Sixth Circuit concluded in *Leeper*, 293 F. at 970-71, that a lessor's mere statement that no further rentals would be received and that the lease was at an end was insufficient notice. The court continued,

> [The notice] did not meet at all the spirit of the Kentucky rule, which is that, before a lease can be terminated by the lessor, he must require the lessee to develop, giving reasonable opportunity therefor. The notice, here said to have been sent, seems to have been an arbitrary cancellation.

-10-

*Id.*

Therefore, the notice and demand requirement illustrated by these cases clearly represents the law in Kentucky. Indeed, in this case, Northup had plenty of opportunity to give notice to Chesapeake and demand production. Instead, it simply sent Chesapeake a letter stating that the Lease was terminated. The law as well as simple fundamental fairness is against Northup. Simple decency would indicate that one who has accepted over $100,000 of delay rentals should at least provide some notice of its intent to terminate the Lease. Instead, Northup simply sent a letter telling Chesapeake to get lost. The law cannot allow such conduct to stand in light of the parties' course of conduct and the terms of the Lease. Northup had a remedy. It chose not to avail itself of that remedy. It can do so in the future, but its December 13, 2006, letter failed to terminate the Lease. (Northup's conduct is similar to that age-old cartoon of Lucy and Charlie Brown. After inducing Charlie Brown to kick the football, Lucy simply pulls it away without notice and allows Charlie Brown to fall to his back. In this area, Northup's imitation of Lucy is simply not allowed.)

Northup claims that *Vaughn v. Hearrell*, 347 S.W.2d 542 (Ky. 1961), is critical in the Court's analysis. However, *Vaughn* is distinguishable. The lease at issue in *Vaughn* was a fill-in-the-blank document known as a Producers 88 lease; unlike the Lease here that was negotiated between the parties. *Id.* at 543. Also, the contract provisions of the lease were more ambiguous than the terms of this Lease. *Id.* at 543-44. The issue in *Vaughn* was whether the drilling of a dry hole within the specified time and subsequent offer of payment of delay rentals kept the lease alive. *Id.* at 543. In *Vaughn*, the termination occurred immediately and no delay rentals were paid. Contrastingly, Chesapeake paid delay rentals for many years – illustrating the parties' intentions and demonstrating that delay rentals could be paid. Finally, every other

Kentucky case requires some sort of notice and demand before termination.  *Vaughn* fails to address the reasonable notice requirement.  *Id.* at 543-44.  Therefore, if *Vaughn* holds that no notice is required, it is inconsistent with the long line of Kentucky cases in this area.

Northup also relies on *Young v. McIllhenny*, 116 S.W. 728 (Ky. 1909).  In *Young*, however, the court noted that under the leases at issue the lessor could not compel the lessee to commence operations.  *Id.* at 730.  Our case is distinguishable because Northup chose not to exercise its clear right to make a demand on Chesapeake to develop the Lease.  Additionally, the *Young* leases are materially different from the subject Lease because they provided that if a well was not commenced within one year, the leases were null and void unless payment was made. *Id.* at 729.  There is no such "null and void" language in the subject Lease.  It simply set forth an initial ten-year period that could be and was extended by the payment of delay rentals.

C.      Perpetuality of the Lease

Northup also argues that the Lease is a perpetual agreement, contrary to Kentucky public policy and case law.  First it cites, KRS 353.500, which states in relevant part:

> (1) It is hereby declared to be the public policy of this Commonwealth to foster conservation of all mineral resources, to encourage exploration for such resources, to protect correlative rights of land and mineral owners, to prohibit waste and unnecessary surface loss and damage and to encourage the maximum recovery of oil and gas from all deposits thereof now known and which may hereafter be discovered; and to promote the safety in the operation thereof.  To that end, KRS 353.500 to 353.720 is enacted and shall liberally be construed to give effect to such public policy.

Ky. Rev. Stat. Ann. § 353.500(1) (1960).  This statute focuses on the importance of the conservation of all mineral resources, the exploration of such resources, and the importance of preventing waste and unnecessary surface loss.  It in no way addresses long-standing contractual relationships between lessors and lessees.  Northup did not cite KRS 353.720, which recognizes

-12-

that KRS 353.500 in no way abridges the contract rights between these parties.

> (2) Nothing in KRS 353.500 to 353.720 is intended to or shall be construed as superseding, impairing, abridging or affecting any contractual rights or obligations now or hereafter existing between the respective owners of oil, gas, coal, or other minerals, or any interests therein.

Ky. Rev. Stat. Ann. § 353.720(2) (1960).

A written contract is to be construed from the standpoint of the parties and the terms employed must be given effect from this standpoint. *Collings v. Scheen*, 415 S.W.2d 589, 593 (Ky. 1967). It is not the function of the Court to change obligations of a contract which the parties have made, nor to add a condition that was not written into the original contract. *White v. Winchester Land Dev. Corp.*, 584 S.W.2d 56, 64 (Ky. Ct. App. 1979); *see also Columbia Gas Const. Co. v. Holbrook*, 81 F.2d 417, 419 (6th Cir. 1936) (applying Kentucky law). In construing a contract, the Court must find out the intentions of the parties and ascertain how they meant the contract to operate at the time they entered into it. *Wilcox v. Wilcox*, 406 S.W.2d 152, 153 (Ky. 1966). Northup and Chesapeake's intentions are clearly demonstrated by Chesapeake's payment of delay rentals and Northup's acceptance of the delay rentals for nearly 40 years. It is not the function of the Court to undermine the parties' intentions or to change their bargained-for obligations. Moreover, as discussed above, the public policy is protected by allowing Northup to demand production in a reasonable time and have Chesapeake give up the Lease if it chooses not to produce.

Northup also cites *Electric and Water Plant Board of the City of Frankfort, Kentucky v. South Central Bell Telephone Co.*, 805 S.W.2d 141, 143 (Ky. Ct. App. 1990), which focuses on general "business contracts." However, this case was specifically distinguished by the Sixth Circuit in *Hayes v. Equitable Energy Resources Company*, 266 F.3d 560, 570 (6th Cir. 2001). In

*Hayes,* the Sixth Circuit rejected the application of *South Central Bell* to cases involving the lease of real property, and more specifically, to oil and gas leases.  *Id.*  As such, Northup's claim is without merit.

### CONCLUSION

Upon review of the stipulated facts, the cross-motions for summary judgment, and responses, and after consideration of the arguments presented at the hearing, the Court finds that the record does not support cancellation of the subject Lease.  As a result, the Court does not reach the issues of Chesapeake's affirmative defenses, nor whether Chesapeake is entitled to repayment of the delay rentals it has paid to Northup since 1979.

Accordingly, the Court finds as follows:

1.     Chesapeake Appalachia, L.L.C.'s motion for summary judgment is **GRANTED**.

2.     Northup Properties, Inc.'s motion for summary judgment is **DENIED**.

3.     A separate judgment will be entered contemporaneously with this Memorandum Opinion and Order.

This the 25th day of March, 2008.

Signed By:

*Amul R. Thapar* AT

**United States District Judge**